## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| **TONY JORGENSON,** | * | |
| | * | |
| **Plaintiff,** | * | |
| **v.** | * | **Civil No. SAG-22-01648** |
| | * | |
| **CONDUENT TRANSPORT SOLUTIONS, INC.** | * | |
| | * | |
| **Defendant.** | * | |
| | * | |

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

## <u>MEMORANDUM OPINION</u>

Plaintiff Tony Jorgenson ("Plaintiff"), who is self-represented, filed an Amended Complaint against his employer, Conduent Transport Solutions, Inc. ("Conduent"), alleging discrimination and retaliation in violation of the Americans with Disabilities Act ("ADA"). ECF 6. Conduent has filed a Motion to Dismiss for failure to state a claim. ECF 11. Plaintiff filed an opposition, ECF 17, and Conduent filed a reply, ECF 18. No hearing is necessary. *See* Loc. R. 105.6 (D. Md. 2021). For the reasons that follow, this Court will grant Conduent's Motion to Dismiss.

### I.   FACTUAL BACKGROUND

The facts contained herein are derived from Plaintiff's Amended Complaint and taken in the light most favorable to Plaintiff as the non-moving party. Plaintiff worked as an engineer for Conduent from April 16, 2018, through March 7, 2022. ECF 6 ¶ 30. In 2021, Conduent adopted a COVID-19 policy applicable to all of its workers. *Id.* ¶¶ 8,10. In relevant part, Conduent's policy required each employee to certify the employee's vaccination status on an online portal. *Id.* ¶ 31.

On August 31, 2021, Conduent's Chief Human Resources ("HR") Officer, Chris Kujawa, emailed Plaintiff to state that if he did not certify his vaccination status, he would be subject to a masking requirement and might be subject to quarantine. *Id.* ¶ 32. The Conduent workplace also contained signs reading, "Mask Required If Not Vaccinated." *Id.* ¶ 33. On January 13, 2022, Conduent's Managing Director, John Fischer, emailed Plaintiff to instruct him that he must wear a mask, wash his hands frequently, and remain six feet away from other workers, or be subject to disciplinary action or termination. *Id.* ¶ 34.

On February 3, 2022, Plaintiff had a meeting with his supervisor and the Senior Director of HR to discuss the vaccination attestation policy. *Id.* ¶ 35. Although Plaintiff explained his opposition to the policy and stated that he felt it was discriminatory, Conduent informed him that he would be fired if he failed to attest to his vaccination status by February 10, 2022. *Id.* On February 17, 2022, Plaintiff emailed Conduent's company management and legal department to state that he believed the vaccination attestation and other Covid-related requirements violated the ADA. *Id.* ¶ 38.

On February 21, 2022, HR informed Plaintiff that he would receive a written warning for his failure to comply with the vaccination attestation policy. *Id.* ¶ 39. On February 28, 2022, Plaintiff sent a "Notice of Discrimination Based Upon Disability" to Conduent's HR Department, invoking the protection of the ADA. *Id.* ¶ 40. On the same date, the Vice President of Technology emailed Plaintiff a "Final Warning" to state that he would be terminated if he did not record his vaccination status by March 4, 2022. *Id.* ¶ 41. On March 1, 2022, Plaintiff met with HR regarding his ADA complaint. *Id.* ¶ 42. And the next day, on March 2, 2022, Plaintiff responded in writing to the final warning notice, arguing that the attestation requirement was not an essential function of his job. ECF ¶ 43. On March 7, 2022, however, Conduent terminated Plaintiff's employment.

*Id.* ¶ 46. Plaintiff filed a charge with the EEOC on March 16, 2002, and received a right to sue letter on April 4, 2022. *Id.* ¶ 47. This lawsuit ensued.

## II.   LEGAL STANDARD

Under Federal Rule of Civil Procedure 12(b)(6), a defendant may test the legal sufficiency of a complaint by way of a motion to dismiss. *See In re Birmingham*, 846 F.3d 88, 92 (4th Cir. 2017); *Goines v. Valley Cmty. Servs. Bd.*, 822 F.3d 159, 165-66 (4th Cir. 2016); *McBurney v. Cuccinelli*, 616 F.3d 393, 408 (4th Cir. 2010), *aff'd sub nom., McBurney v. Young*, 569 U.S. 221 (2013); *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999). A Rule 12(b)(6) motion constitutes an assertion by a defendant that, even if the facts alleged by a plaintiff are true, the complaint fails as a matter of law "to state a claim upon which relief can be granted."

Whether a complaint states a claim for relief is assessed by reference to the pleading requirements of Federal Rule of Civil Procedure 8(a)(2). That rule provides that a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." The purpose of the rule is to provide the defendants with "fair notice" of the claims and the "grounds" for entitlement to relief. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007).

To survive a motion under Rule 12(b)(6), a complaint must contain facts sufficient to "state a claim to relief that is plausible on its face." *Id*. at 570; *see Ashcroft v. Iqbal*, 556 U.S. 662, 684 (2009) ("Our decision in *Twombly* expounded the pleading standard for all civil actions[.]") (quotation omitted); *see also Willner v. Dimon*, 849 F.3d 93, 112 (4th Cir. 2017). However, a plaintiff need not include "detailed factual allegations" in order to satisfy Rule 8(a)(2). *Twombly*, 550 U.S. at 555. Further, federal pleading rules "do not countenance dismissal of a complaint for imperfect statement of the legal theory supporting the claim asserted." *Johnson v. City of Shelby*, 574 U.S. 10, 11 (2014) (per curiam).

Nevertheless, the rule demands more than bald accusations or mere speculation. *Twombly*, 550 U.S. at 555; *see Painter's Mill Grille, LLC v. Brown*, 716 F.3d 342, 350 (4th Cir. 2013). If a complaint provides no more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action," it is insufficient. *Twombly*, 550 U.S. at 555. Rather, to satisfy the minimal requirements of Rule 8(a)(2), the complaint must set forth "enough factual matter (taken as true) to suggest" a cognizable cause of action, "even if . . . [the] actual proof of those facts is improbable and . . . recovery is very remote and unlikely." *Twombly*, 550 U.S. at 556.

In reviewing a Rule 12(b)(6) motion, a court "must accept as true all of the factual allegations contained in the complaint" and must "draw all reasonable inferences [from those facts] in favor of the plaintiff." *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 440 (4th Cir. 2011) (citations omitted); *see Semenova v. Md. Transit Admin.*, 845 F.3d 564, 567 (4th Cir. 2017); *Houck v. Substitute Tr. Servs., Inc.*, 791 F.3d 473, 484 (4th Cir. 2015); *Kendall v. Balcerzak*, 650 F.3d 515, 522 (4th Cir. 2011), *cert. denied*, 565 U.S. 943 (2011). However, a court is not required to accept legal conclusions drawn from the facts. *See Papasan v. Allain*, 478 U.S. 265, 286 (1986). "A court decides whether [the pleading] standard is met by separating the legal conclusions from the factual allegations, assuming the truth of only the factual allegations, and then determining whether those allegations allow the court to reasonably infer" that the plaintiff is entitled to the legal remedy sought. *A Soc'y Without a Name v. Virginia*, 655 F.3d 342, 346 (4th Cir. 2011), *cert. denied*, 566 U.S. 937 (2012).

Here, Plaintiff attached one hundred pages of documents to his Amended Complaint, including the relevant Conduent policies and his email exchanges with Conduent management. ECF 6-4. Federal courts may consider documents incorporated into a complaint by reference without converting a 12(b)(6) motion into a motion for summary judgment. *Tellabs, Inc. v. Makor*

*Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007); *Sec'y of State for Defence v. Trimble Navigation Ltd.*, 484 F.3d 700, 705 (4th Cir. 2007).

Finally, because Plaintiff is self-represented, his pleadings are "liberally construed" and "held to less stringent standards than [those filed] by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quotations omitted). "However, liberal construction does not absolve Plaintiff from pleading a plausible claim." *Bey v. Shapiro Brown & Alt, LLP*, 997 F. Supp. 2d 310, 314 (D. Md. 2014), *aff'd*, 584 F. App'x 135 (4th Cir. 2014); *see also Coulibaly v. J.P. Morgan Chase Bank, N.A.*, No. DKC-10-3517, 2011 WL 3476994, at *6 (D. Md. Aug. 8, 2011) ("[E]ven when pro se litigants are involved, the court cannot ignore a clear failure to allege facts that support a viable claim."), *aff'd* 526 F. App'x 255 (4th Cir. 2013).

Moreover, a federal court may not act as an advocate for a self-represented litigant. *See Brock v. Carroll*, 107 F.3d 241, 242-43 (4th Cir. 1996); *Weller v. Dep't of Soc. Servs.*, 901 F.2d 387, 391 (4th Cir. 1990). Therefore, the court cannot "conjure up questions never squarely presented," or fashion claims for a plaintiff because he is self-represented. *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985); *see also M.D. v. Sch. Bd.*, 560 F. App'x 199, 203 n.4 (4th Cir. 2014) (unpublished) (rejecting self-represented plaintiff's argument that district court erred in failing to consider an Equal Protection claim, because plaintiff failed to allege it in the complaint).

## III.   ANALYSIS

Plaintiff's Amended Complaint can be read to contain claims of discrimination and retaliation under the ADA. Initially, this Court must address a threshold issue: Does Plaintiff qualify for the ADA's protections?

The ADA protects qualified individuals with a disability. "An individual is disabled under the ADA . . . if he or she: (1) has a physical or mental impairment that substantially limits one or

more of the individual's major life activities; (2) has a record of such an impairment; or (3) is regarded as having such an impairment." *Davis v. University of North Carolina*, 263 F.3d 95, 99 (4th Cir. 2001) (citations omitted); *see also* 42 U.S.C. § 12102(1)(A). "An impairment is a disability . . . if it substantially limits the ability of an individual to perform a major life activity as compared to most people in the general population." 29 C.F.R. § 1630.2(j)(l)(ii). Examples of "major life activities" include "caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, sitting, reaching, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, interacting with others, and working." *Id.* § 1630.2(i)(1)(i). Ultimately, "[t]he determination of whether a person is disabled is an individualized inquiry, particular to the facts of each case." *E.E.O.C. v. Sara Lee Corp.*, 237 F.3d 349, 352 (4th Cir. 2001) (citations omitted).

Plaintiff concedes that he has not been diagnosed with any disabling condition. ECF 6 ¶ 51. Instead, he argues that he is "regarded as" having a disabling condition by Conduent in that Conduent is trying to impose "medical treatments" on him, or that he is viewed as having a "record of" a disabling condition. *Id.* ¶¶ 51, 57.

Plaintiff's position is unavailing. Initially, he has not alleged facts showing a "record of" a disabling condition. "An individual has a record of a disability if the individual has a history of, or has been misclassified as having, a mental or physical impairment that substantially limits one or more major life activities." 29 C.F.R. § 1630.2(k)(l); *Reynolds v. Am. Nat. Red Cross*, 701 F.3d 143, 153 (4th Cir. 2012). Plaintiff does not allege any history of impairment. Instead, he argues that Conduent "mis-classified" him as unvaccinated "and made a record of impairment by imposing its [attestation] policy upon plaintiff." ECF 6 ¶ 129. But Plaintiff has alleged no facts indicating that Conduent classified him as having any impairment that limits a major life activity. In fact, Conduent's records could not contain anything about his vaccination or other medical

status, since he never provided that information to the company. Moreover, the exchanges attached

to his Amended Complaint, including the written "Performance Improvement Plan" warning

provided to Plaintiff, document Conduent's position that Plaintiff simply needed to comply with

the attestation policy by giving a yes/no answer on the portal. ECF 6-4 at 42, 60-61. Merely

requiring Plaintiff to follow a COVID-19 safety policy applicable to all employees does not support

the inference that Conduent classified Plaintiff as disabled under ADA. *See Speaks v. Health*

*Systems Management, Inc.*, No. 5:22-CV-00077-KDB-DCK, 2022 WL 3448649, at *5 (W.D.N.C.

Aug. 17, 2022) (rejecting claim that defendant classified plaintiff as impaired under the ADA by

requiring her to comply with a mandatory COVID-19 vaccination policy, because plaintiff's

position "would mean that [defendant] considered all its employees to have an 'impairment,' which

is of course not a plausible inference").

        Moreover, Plaintiff has not pleaded facts plausibly suggesting that Conduent "regarded

him" as having a disabling condition. To meet the "regarded as having a disability" prong, a

plaintiff must plausibly allege "that he or she has been subjected to an action prohibited under this

chapter because of an actual or perceived physical or mental impairment whether or not the

impairment limits or is perceived to limit a major life activity." 42 U.S.C. § 12102(3)(A); *see also*

*Miller v. Maryland Dep't of Nat. Res.*, 813 F. App'x 869, 876 (4th Cir. 2020).

        Plaintiff's attempt to rely on that provision tries to fit a square peg into a round hole. There

is simply no perceived disabling impairment alleged in this case. Not knowing a person's

vaccination status is not the same as believing that person has a physical or mental impairment.

That person, masked or unmasked, can perform all of his or her job duties as an engineer. And

vaccination status is likewise not an impairment or an impediment to work-related tasks.

Conduent's decision to protect its workplace by requiring its employees to attest to their

vaccination status—and in some cases, to wear masks—does not plausibly reflect a determination

or belief that any of its employees are disabled or impaired. *See Speaks*, 2022 WL 3448649, at \*5 (explaining that "[r]efusing to get a vaccine required by an employer is not itself an 'impairment' of any sort[,]" but instead "reflects a personal choice [that] cannot be considered an impairment under the ADA").

Moreover, as evidenced by the documentation attached to Plaintiff's Amended Complaint, Conduent's policies applied universally to all U.S.-based employees. ECF 6-4 at 16-17. Plaintiff was not singled out and asked to attest to his vaccination status. All employees had to comply. And all unvaccinated employees, or those who had not disclosed their vaccination status, had to be masked. *Id*. at 17. The policies did not hinge on any assessment of disability or perceived impairment. Thus, Plaintiff has not plausibly alleged that he is disabled within the meaning of the ADA.

The other ADA provisions Plaintiff references in his Amended Complaint are equally unavailing. For example, 29 C.F.R. § 1630.9(d) states that an employee is not required to accept a reasonable accommodation for a disability. As described above, Plaintiff has not alleged that he had a "disability" within the meaning of the ADA, and he conceded in his correspondence with Conduent that he did not request any accommodation. ECF 6-4 at 48. Nor can any of Conduent's policies, such as the attestation or masking requirements, be described as accommodations, since they are not designed to assist an employee in performing his or her job tasks. Part 1630.9(d) is therefore inapplicable.

Another subsection Plaintiff cites, Part 1630.13(b), states that an employer cannot require a medical examination or "make inquiries as to whether an employee is an individual with a disability or as to the nature or severity of such disability." Neither of those prongs is at issue here, since Conduent's attestation requirement did not constitute a medical examination or an inquiry about a disability or disabling condition. Both vaccinated and unvaccinated people are able to

perform their work and engage in major life activities without impairment or limitation. Part 1630.13(b), then, is also inapposite.[1]

Even if Plaintiff had sufficiently alleged that he was a qualified individual with a disability, which he has not, he has failed to plausibly allege that he was terminated *because of* his alleged disability. To demonstrate discrimination under the ADA, Plaintiff must meet the "but for" standard of causation. *Gentry v. E. W. Partners Club Mgmt. Co. Inc.*, 816 F.3d 228, 235 (4th Cir. 2016). The record here, as attached by Plaintiff to his Amended Complaint, reflects Conduent's persistent efforts to procure his compliance with the attestation policy, and its eventual ultimatum that he would be terminated if he refused to comply. Put simply, then, Plaintiff has not plausibly alleged that Conduent possessed some discriminatory animus linked to Plaintiff's unknown medical condition. He was simply terminated for failing to adhere to company policy. Given the distinct lack of allegations linking Plaintiff's termination to any actual or perceived disability, "but for" causation has not been plausibly alleged. Plaintiff's ADA discrimination claim will be dismissed.

Plaintiff's other claim alleges that Conduent retaliated against him by imposing "punitive measures" and terminating him after he asserted his ADA-protected rights. ECF 6 ¶¶ 153-86. As summarized by the Fourth Circuit, the ADA retaliation standard is as follows:

> Under 42 U.S.C. § 12203, "[n]o person shall discriminate against any individual because such individual has opposed any act or practice *made unlawful by this chapter* or because such individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this chapter." (emphasis added). In order to establish a prima facie case of retaliation, a plaintiff must allege (1) that she has engaged in conduct protected by the ADA; (2) that she suffered an adverse action subsequent to engaging in the protected conduct; and (3)

---

[1] Plaintiff also argues a violation of Part 1630.14(c), but that subsection simply explains the circumstances under which the medical examinations and disability-related inquiries generally prohibited by Part 1630.13 are permitted. Because, as described above, the request for attestation is not barred by Part 1630.13, Conduent need not establish that it falls within the exceptions in Part 1630.14.

> that there was a causal link between the protected activity and the adverse action. *Rhoads v. FDIC*, 257 F.3d 373, 392 (4th Cir. 2001). In reviewing retaliation claims, courts recognize the need to balance the desire to encourage employees to oppose unlawful discrimination, with "an employer's interest in maintaining a harmonious, productive and loyal workforce." *Fitch v. Solipsys Corp.*, 94 F. Supp. 2d 670, 678 (D. Md. 2000).

*Freilich v. Upper Chesapeake Health, Inc.*, 313 F.3d 205, 216 (4th Cir. 2002). Significantly, the ADA does not require proof of disability to mount a retaliation claim, so the Court's conclusion that Plaintiff has failed to demonstrate a disability as a matter of law is not controlling. *Rhoads*, 257 F.3d at 380. Indeed, Plaintiff does not even have to "prove the conduct he opposed was actually an ADA violation. Rather, he must show he had a 'good faith belief' the conduct violated the ADA." *Reynolds*, 701 F.3d at 154.

Plaintiff's simple assertion that he "was regarded as having a disability and that he was a qualified individual with a disability," ECF 6 ¶ 155, though, does not establish a "good faith belief." *See Lundstrom v. Contra Costa Health Servs.*, Civ. No. 22-cv-06227-CRB, 2022 WL 17330842, at *6 n.7 (N.D. Cal. Nov. 29, 2022) (granting employer's motion to dismiss an ADA retaliation claim where the plaintiff failed to plausibly allege that her employer's COVID-19 policies "violated the ADA, or that her unwillingness to abide by them was a request for an ADA remedy, as she was not disabled"). Conduent informed Plaintiff that the fact that he opposed the attestation requirement did not render it discriminatory. ECF 6-4 at 69. And Plaintiff otherwise fails to explain how his refusal to comply with a company-wide health and safety requirement could reasonably constitute protected activity under the ADA. Accordingly, Plaintiff's simple assertion that he was opposing discrimination under the ADA does not amount to a good faith belief that he was engaged in was protected activity, absent some reasonable basis to believe there was a viable claim of disability discrimination. A contrary ruling would permit any plaintiff to set

up a retaliation claim simply by using the term "ADA discrimination" and later claiming a good faith belief, however patently unfounded, that his conduct was protected.

Even if he had been able to demonstrate a good faith belief, though, Plaintiff cannot establish a retaliation claim because the mandatory attestation policy was put in place before he expressed opposition or refused to comply with it. Employees were originally asked (in a non-mandatory fashion) to attest their vaccination status by August 27, 2021. ECF 6-4 at 16-17. On January 12, 2022, it converted to a mandatory requirement for all employees. *Id.* at 22. Employees were advised that failure to comply could lead to termination. *Id.* at 29. Plaintiff's employment was not terminated until March 7, 2022, but all of his complaints invoking the ADA occurred between the implementation of the mandatory policy in January, 2022, and his eventual termination two months later. Courts regularly dismiss retaliation complaints in these circumstances, because the consequences for non-compliance with the policy were established before any alleged protected activity occurred. *See, e.g.*, *Speaks*, 2022 WL 3448649, at *6 (dismissing retaliation claim where mandatory vaccination policy was enacted before the plaintiff spoke up in opposition to it); *Lundstrom*, 2022 WL 17330842, at *6 (granting employer's motion to dismiss a retaliation claim where COVID policies existed before plaintiff opposed them); *Shklyar v. Carboline Co.*, Civ. No. 4:22 CV 391 RWS, 2022 WL 2867073, at *5-6 (E.D. Mo. July 21, 2022) (same). The allegations in Plaintiff's Amended Complaint demonstrate conclusively that there was no causal link between Plaintiff's allegations of ADA discrimination and his eventual termination, due to the fact that the mandatory attestation policy came into effect before Plaintiff opposed it. For that alternative reason, then, Plaintiff's retaliation count is also subject to dismissal.[2]

---

[2] In the Amended Complaint, Plaintiff alludes to the fact that this Court has adopted its own COVID-19 mitigation policies and questions whether the Court can be "impartial" in this case.

## IV.   CONCLUSION

For the reasons set forth above, Defendant's Motion to Dismiss, ECF 11, will be GRANTED and this case will be CLOSED.  A separate Order follows.


Dated: February 2, 2023                                    _____/s/_____
                                                            Stephanie A. Gallagher
                                                            United States District Judge

---

ECF 6 ¶ 29. Initially, this Court notes that it is Plaintiff who chose to file this case in this United States District Court, rather than some other forum. More importantly, Plaintiff does not even attempt to provide an explanation, beyond his conclusory statement, as to why this Court is not suited to adjudicate this dispute. Ultimately, this Court is bound to apply the law governing Plaintiff's ADA claims, and it has done so faithfully in this case.